No. 15,682.

EADDY *v*. THE PEOPLE.
(174 P. [2d] 717)

Decided November 12, 1946.

Mr. WALTER F. SCHERER, Mr. MORTON M. DAVID, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

DEFENDANT was convicted of murder of the first degree, and sentenced to life imprisonment. He here seeks review praying that the matter be determined upon his application for supersedeas.

Defendant urges as error: (1) Overruling motion for mistrial because of the separation of the jury during the trial; (2) refusal of directed verdict for failure to prove guilt beyond a reasonable doubt, and (3) being compelled to stand trial, clothed in the garb of a convict. It is also urged as error that the verdict is contrary to law because based upon the uncorroborated evidence of an accomplice, but this ground is not argued and has no merit.

First, as to permitting the jury to separate. The jury was composed in part of men and in part of women. When it became necessary for the jury to be held overnight, the women jurors were housed in the dormitory in the West Side Courthouse while the men were housed in one of the dormitories in the Municipal building. At all times each group of jurors was in charge of a bailiff of the court and there is no suggestion that they were at any time subject to outside influences. Thus there was shown no separation of the jury in the sense that the jurors were at any time out of the custody of a bailiff

or in position to communicate with outsiders in regard to the case, and there was no separation except under necessity created by the constitutional amendment making women eligible for jury service. Consequently, the rule against separation was not violated. "The rule that the jury must be kept together does not apply, even in capital cases, to temporary separation of one or more jurors from the others in cases of necessity or convenience, where the separating jurors are in charge or in sight of an officer and are not allowed to communicate with other persons." 23 C.J.S., pp. 1017, 1018, §1356. Further, there is no showing of prejudice. *Amis v. People*, 83 Colo. 400, 265 Pac. 909.

Second, as to the sufficiency of the evidence. No purpose would be served by its review. That a mercenary, brutal and deliberate murder was committed clearly appears, and the evidence was sufficient, if believed by the jury, to support its finding that the defendant had part therein. Since the cause is remanded for a new trial, the question of sufficiency of the evidence will be for determination by a jury to be empanelled upon the evidence then submitted.

Third, as to the clothing worn by defendant during the trial. The record shows that defendant was a colored soldier, attired at the time of his arrest in United States Army uniform. At the trial he was brought into court wearing striped coveralls with the words "County Jail" written in large letters across the back. Objection to this garb in behalf of defendant and request that the court direct the proper officer to return him to the court room properly attired were overruled. Did this constitute prejudicial error?

Ordinarily a defendant may be brought to trial in the garments in which he is apprehended unless he himself procures other fit garments, in which case he may wear them. If there is any substantial reason why a defendant should not stand trial in garb so worn or procured by him, then, after opportunity to procure proper cloth-

ing, he may be tried in any fit and decent clothing furnished by the jailor, and conventionally made coveralls of customary striped or other material should be adequate. The decision as to proper clothing should be within the sound discretion of the trial court which has the custody of the defendant; but compelling him to wear clothing throughout his trial bearing the words "County Jail" in large letters raises a more serious question. Was that an abuse of discretion? For anything made to appear, defendant as a member of the armed forces of the United States was entitled to wear his uniform during the trial. It is urged in behalf of the people that permitting him so to do might have created prejudice in his favor. By the same logic we may conclude that the garb in which he was required to appear might create a prejudice against him. No precedent has been called to our attention. The right of a prisoner undergoing trial to be free from shackles, unless shown to be a desperate character whose restraint is necessary to the safety and quiet of the trial, is hornbook law. The reasons given are: "That his mind should not be disturbed by any uneasiness his body or limb should be under," *State v. Temple,* 194 Mo. 237, 92 S.W. 869, in which the author of the opinion states and quotes from *Rex. v. Layer,* 16 How. St. Tr. 94: that such restraint upon a prisoner "inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense;" citing *People v. Harrington,* 42 Cal. 165, 10 Am. Rep. 296, and that, "A prejudice might be created in the minds of the jury against a prisoner who should be brought before them handcuffed and shackled, which might interfere with a fair and just decision of the question of the guilt or innocence of such prisoner." *Hauser v. People,* 210 Ill. 253, 71 N.E. 416.

We believe the mind of a prisoner would be as much disturbed and his mental faculties as much confused and embarrassed by carrying on his person such brand of

incarceration, as here required, as by physical shackles, and that a prejudice against a prisoner might equally well be created thereby in the minds of the jurors. It is difficult to find any distinction, as to the humiliation involved, between requiring a prisoner to wear the words "County Jail" branded upon his clothing and requiring him to wear them on a placard attached about his neck; either is a mockery, an indignity and a humiliation not consonant with innocence and freedom. The presumption of innocence requires the garb of innocence, and regardless of the ultimate outcome, or of the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require. Such right was not given this defendant.

The judgment is reversed and the case remanded.

MR. JUSTICE ALTER, not having heard the argument, did not participate.