In re DERWIN STALEY, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. DERWIN STALEY, Respondent-Appellant.)

Third District   No. 75-345

Opinion filed July 21, 1976.

STENGEL, J., dissenting.

Robert Agostinelli and Mary Robinson, both of State Appellate Defender's Office, of Ottawa, for appellant.

Frank Yackley, State's Attorney, of Ottawa (James Hinterlong and Michael Weinstein, both Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This appeal derives from a proceeding in which a petition was filed against respondent Derwin Staley under section 4—1 of the Juvenile Court Act (Ill. Rev. Stat., ch. 37, par. 704—1). It was alleged in the petition that defendant Staley was a delinquent in that he had committed the offense of aggravated battery. Staley was 15 years old and was adjudicated a delinquent after a hearing and placed in custody of the juvenile division of the Department of Corrections.

On appeal in this court, defendant Staley contends that the trial court committed prejudicial and reversible error in requiring Staley to remain in handcuffs throughout the adjudicatory hearing.

The delinquency charges arose out of an incident on May 2, 1975, while Staley was in the custody of the La Salle County Detention Home pursuant to a petition alleging him to be a minor in need of supervision.

On May 2 another youth, Mat Sellers, got into a scuffle with a teacher. Staley came to the aid of Sellers by blocking the path of the counselor and the superintendent who were trying to pull Sellers away from the teacher. The teacher was hospitalized as a result of injuries he received in the scuffle with Sellers.

Staley was then taken immediately to the juvenile court in handcuffs. The assistant public defender appointed to represent him requested that the trial court order the shackles removed. There was no objection from the Detention Home guard accompanying Staley, but the prosecutor did object, and the court refused to order the handcuffs taken off Staley. The court stated he didn't want what was allegedly going on at the Home to occur in the courtroom.

The court proceeded to set May 9 as the date for the adjudicatory hearing. On May 9, the hearing was again set over until May 12 when the sheriff apparently refused to bring Staley from the juvenile home in Kankakee where he was being kept. Despite the inability of respondent's counsel to be present on May 12, the hearing was held on May 12 with another assistant public defender representing Staley.

The State attempted to introduce some evidence that Staley actually struck the teacher during the scuffle at the Detention Home, but the court eventually disallowed that evidence. The court nevertheless found Staley delinquent, and determined that the evidence showed he aided and abetted Sellers in the beating.

At the time the hearing began, defense counsel requested that the handcuffs again placed on Staley be removed. The trial court again repeated his comment made on May 2 and noted that the courtroom was not constructed for security purposes. The court indicated that the denial was conditional and said he might reconsider in the afternoon if Staley behaved himself. By noon the evidence was all in and the afternoon session consisted solely of formally closing the proofs and closing arguments. No further request was made by respondent and no further ruling by the court as to the shackles was made.

■■■ We recently considered the general rule that a defendant in a criminal case should not be required to appear shackled in the courtroom, except when it is necessary and when there are no other less extreme measures available. *(People v. Boose* (3d Dist. 1975), 33 Ill. App. 3d 250, 337 N.E.2d 338.) We believe the same rule is applicable in delinquency proceedings in juvenile court, since there is a virtual identity of such proceedings with the criminal process. *(In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) In the *Boose* case we noted that "[t]he most significant justification for the rule (against shackling defendants) is the prejudicial effect on the jury's feelings about the defendant". (33 Ill. App. 3d 250, 253.) While the instant case did not involve a jury (this important

factor is not a consideration in the cause before us) there are other reasons for the rule. Binding a defendant can impair his ability to communicate with counsel and thus effectively assist in his defense. It is destructive of the dignity and decorum of the court and the judicial process. (See *People v. Boose*, 33 Ill. App. 3d 250, 253.) The impairment of defendant's ability to assist in his own defense could stem from a physical handicap imposed by the shackles and from the accompanying mental distress and confusion that could result. It is difficult to establish by proof the prejudice to a defendant, but we must recognize that it could exist and we believe a good reason must be shown by the State to justify shackling a defendant during his trial, before it was determined whether he is innocent or guilty.

Normally, reasons for binding a defendant are to prevent escape, to protect others in the court, and to curb possible disruption. The record should show facts supporting the court's determination that the shackling was necessary for one of these or for some other reason which might justify the action.

■■ Here we find nothing which suggests the likelihood that Staley would try to escape or attack others in the court, or that he would disrupt the proceedings. The only basis upon which the court relied, was the nature of the charge. Standing by or even preventing others from participating in the conflict would not be a sufficient basis, in absence of some specific application of such activity to the situation in the courtroom.

■■ Lack of security in the courtroom could be a factor. We find nothing suggesting the probability of an attempted escape or harm to others. There was no showing in the record that less drastic measures such as the presence of a bailiff or an armed guard, would not be feasible. See *People v. Boose*, 33 Ill. App. 3d 250, 254.

■■ We agree with the State that a defendant's past criminal record, his reputation, and his character, are also factors which the trial court may consider in evaluating the need for shackles. The State asserted that Staley had run away from his home several times before being placed in a detention home, or, at least on one occasion. We do not find that this circumstance (which was not even argued in the trial court in support of the retention of the shackles) is enough.

■■ The State points out that respondent did not renew his request for removal of the shackles in the afternoon despite the court's indication that it would reconsider at that time. This argument overlooks the fact that the hearing was over by noon and that the harm done at that point could never be undone. The failure of respondent to renew the request at that time should not bar him from presenting his contention on appeal.

The State also notes that the respondent did not preserve the instant

error in express terms in his post-hearing motion. While generally the failure to allege error in a post-trial motion means that it is waived for purposes of appeal *(People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied,* 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658), we believe that the objection was sufficiently preserved by the defense requests at the hearing and the assignments of error in the post-trial motion regarding denial of a fair trial and due process of law. Alternatively, we believe that the question is of such nature as to require as to consider the issue in the interests of justice. Ill. Rev. Stat. 1975, ch. 110A, par. 615(a).

We conclude that the shackling of defendant, even though it was a bench trial, was not harmless error and we, accordingly, reverse the judgment of the lower court and remand this cause for another adjudicatory hearing.

Reversed and remanded.

STOUDER, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

My esteemed colleagues have set sail upon previously uncharted waters, and I cannot accompany them. This is a case of first impression, and the majority opinion relies exclusively upon a case involving a trial before a jury, and no cases dealing with the question of physical restraints upon a defendant at a bench trial have been cited. The common law rule that a defendant is entitled to appear at trial without shackles is a corollary to the due process requirement that there must be no conduct which would inflame the passion prejudice *of the jury* against the accused by undermining the presumption of his innocence. Nevertheless, courts have recognized that it is within the discretion of the trial court to have a prisoner shackled when such a precaution appears necessary to prevent violence or escape. (See 21 Am. Jur. 2d *Criminal Law* §240 (1965).) As a court of review, we are here concerned only with whether there was a clear abuse of discretion. It is my view that, in the case of a hearing before the court, the trial judge should have considerable latitude in determining whether handcuffs are necessary for purposes of safety.

In the case at bar, the record, as amended by leave of this court, contains an affidavit of the trial judge stating that the hearing was held in a small courtroom containing at least four exits, including one exit which leads directly to an outdoor fire escape, and that at the outset of the hearing no bailiff was present. The court also expressed concern because of defendant's past record of violence while in custody. In such a setting, I am not persuaded that the court acted in abuse of its discretion in refusing to permit the unshackling of this defendant.

There are valid reasons for distinguishing between bench trials and jury trials. A trial judge by training and experience is an impartial arbiter in our adversary system of justice. We should not presume that a judge will be prejudiced by seeing a defendant in handcuffs throughout a bench trial any more than we assume a judge to have been influenced by hearing improper evidence.

In all those jury trial cases where a question of shackles has arisen, courts have said that the trial judge must determine the need for physical restraints after considering the defendant's past record, previous conduct, and other circumstances. In some cases, the judge has ordered that the shackled defendant enter and leave the courtroom at times when the jury is not present so as to make the restraints as inconspicuous to the jury as possible. *(E.g., Kennedy v. Cardwell* (6th Cir. 1973), 487 F.2d 101, *cert. denied,* 416 U.S. 959, 40 L. Ed. 2d 310, 94 S. Ct. 1976.) No reviewing court has ever suggested that the judge presiding at a jury trial would be prejudiced by seeing or knowing about the shackles and the reasons for requiring them. The judge presiding at a bench trial should be accorded no less confidence and respect.

In jury trial cases, some courts have required an "immediate necessity" for the use of shackles; in other words, there must be some reason based on the conduct of the accused at trial. *(State v. Coursolle* (1959), 255 Minn. 385, 97 N.W.2d 472, 75 A.L.R. 2d 755.) According to the more modern view, however, the court need not wait for a dangerous act at trial before permitting the prisoner to be shackled if the court has any reasonable basis for believing that security would be impaired. *(Loux v. United States* (9th Cir. 1968), 389 F.2d 911, *cert. denied,* 393 U.S. 867, 21 L. Ed. 2d 135; 89 S. Ct. 151. *United States v. Roustio* (7th Cir. 1972), 455 F.2d 366.) Thus a prisoner's past attempts to escape were a sufficient basis for requiring shackles during a jury trial in *Kennedy v. Cardwell,* and no abuse of discretion was found.

Here, defendant was originally placed in a juvenile detention home because of his repeated attempts to run away, and he was later charged with aggravated battery involving, not just a "scuffle," but the severe beating of a detention home official while in custody. The primary fact in dispute at the hearing was the extent of defendant's participation in the beating. Thus, on the basis of defendant's past record, the trial court had some reason to believe defendant presented a threat to the security of the court at the time the court ruled on the request that his handcuffs be removed. The finding that defendant merely aided and abetted the commission of the violent acts was not made until the court had heard all of the evidence. Obviously we have the advantage of hindsight not available to the trial court at the time the ruling was made.

The majority's reliance on *People v. Boose* (3d Dist. 1975), 33 Ill. App.

3d 250, 337 N.E.2d 338, is misplaced. In *Boose,* the issue was whether a defendant at a competency hearing before a jury was entitled to the benefit of the rule against shackles that applies to criminal jury trials. In that case we held, as follows:

" [W]e believe that the reasons advanced in support of the rule, as set forth above, apply with equal force in a competency or fitness proceeding *before a jury.*"(Emphasis added.) 33 Ill. App.3d 250, 255.

Apparently the majority are of the opinion that, absent the possibility of jury prejudice, a defendant in handcuffs may nevertheless be denied a fair trial because of an impaired ability to communicate with counsel and effectively assist in his defense. This problem was considered in *Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057, where the Supreme Court discussed whether an obstreperous defendant should be bound and gagged during a jury trial. The court observed that a defendant's ability to communicate with counsel is "greatly reduced when the defendant is in a condition of *total physical restraint.*" (Emphasis added.) (397 U.S. 337, 344, 25 L. Ed. 2d 353, 359 90 S. Ct. 1057, 1061.) Here, we have neither bonds nor gags nor "total physical restraint" but rather handcuffs. Common sense compels me to conclude that handcuffs impose such a minimal burden on incourt communications between an accused and his attorney as to be worthy of little weight in this case.

Furthermore, the maintenance of "the dignity and decorum of the court and the judicial process" referred to by the majority must be balance against the safety and security of the court, and at this distance, I cannot fault a decision which preserves security at the expense of decorum where a jury is not present. In any event, matters of courtroom decorum rest within the sound discretion of the trial court. *Illinois v. Allen; United States v. Roustio.*

For the reasons stated, I must dissent from this opinion.