(No. 48847.—

*In re* DERWIN STALEY, a Minor.—(The People of the State of Illinois, Appellant, v. Derwin Staley, Appellee.)

*Opinion filed June 1, 1977.*

34

UNDERWOOD and RYAN, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Frank X. Yackley, State's Attorney, of Ottawa (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of

Chicago, and James E. Hinterlong and Michael B. Weinstein, of the Illinois State's Attorneys Association Appellate Assistance Service, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Mary Robinson, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

In April of 1975, the circuit court of La Salle County found the defendant, Derwin Staley, a 15-year-old youth, to be a minor in need of supervision and placed him in the La Salle County Detention Home. On May 2, 1975, a resident of the home attacked and severely beat a teacher. The defendant, by blocking their path, prevented a counselor and the superintendent of the home from coming to the teacher's assistance. The defendant was immediately taken before the La Salle County juvenile court in handcuffs. His attorney moved that the handcuffs be removed, stating that two deputies were present and that one could be placed in front of each door to prevent escape. A guard from the home, who accompanied the defendant, stated that it was up to the judge to decide whether the handcuffs should be removed. The assistant State's Attorney recommended to the court that the defendant remain handcuffed. The trial court followed the prosecutor's recommendation, stating that it did not want what was happening at the home to occur in the courtroom.

A petition alleging the defendant's delinquency was filed and on May 12, 1975, an adjudicatory hearing was held and the defendant was found delinquent. He had been brought into court for this hearing wearing handcuffs and his attorney again moved for their removal. The court denied the motion, saying there was "poor security" in the

courtroom and that it might order the handcuffs removed at the afternoon session if the defendant behaved properly. All of the evidence was presented at the morning session; at the afternoon session the trial court held that the defendant was delinquent and then proceeded to commit him to the Department of Corrections for diagnostic evaluation. The defendant did not make a request for removal of the handcuffs at the afternoon session. The appellate court reversed and remanded the cause for another adjudicatory hearing, holding that the trial court erred when it required the defendant to appear at the adjudicatory hearing wearing handcuffs. (40 Ill. App. 3d 528.) We granted the State leave to appeal under Rule 315. 58 Ill. 2d R. 315.

In *People v. Boose* (1977), 66 Ill. 2d 261, 265-66, we said:

"It has been held that the shackling [which includes handcuffing, see ABA Standards, Trial by Jury sec. 4.1(c), Commentary 94 (1968)] of the accused should be avoided if possible because: (1) it tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process. (*Kennedy v. Cardwell* (6th Cir. 1973), 487 F.2d 101, 105-06; *State v. Tolley* (1976), 290 N.C. 349, 367, 226 S.E.2d 353, 367.) Most of the courts that have considered the question have held that an accused should never be placed in restraints in the presence of the jury 'unless there is a showing of a manifest need for such restraints.' (*People v. Duran* (1976), 16 Cal. 3d 282, 290-91, 545 P.2d 1322, 1327, 127 Cal. Rptr. 618, 623; see *Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057; *United States v. Theriault* (5th Cir. 1976), 531 F.2d 281; *Kennedy; Tolley*.) The ABA Standards relating to jury trials provide:

'Defendants *** should not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order.' ABA Standards, Trial by Jury sec. 4.1(c) (1968)."

The State points out that there was no trial by jury here. The possibility of prejudicing a jury, however, is not the only reason why courts should not allow the shackling of an accused in the absence of a strong necessity for doing so. The presumption of innocence is central to our administration of criminal justice. In the absence of exceptional circumstances, an accused has the right to stand trial "with the appearance, dignity, and self-respect of a free and innocent man." (*Eaddy v. People* (1946), 115 Colo. 488, 492, 174 P.2d 717, 719.) It jeopardizes the presumption's value and protection and demeans our justice for an accused without clear cause to be required to stand in a courtroom in manacles or other restraints while he is being judged. Also, as we observed in *Boose,* shackling restricts the ability of an accused to cooperate with his attorney and to assist in his defense. (66 Ill. 2d 261, 265.) The reasons for forbidding shackling are not limited to trials by jury. Section 4.1(c) of the ABA Standards relating to trial by jury, which is cited above, while it does concern the conduct of jury trials, does not limit its disapproval of physical restraint of a defendant to such trials. The commentary to section 4.1 provides:

"*** [T]he matter of custody and restraint of defendants and witnesses at trial is not of concern solely in those cases in which there is a jury. Obviously, a defendant should be able to consult effectively with counsel in all cases. Prison attire and unnecessary physical restraint are offensive even when there is no jury. ***

\* \* \*

(c) *** Because the rule rests only in part upon the possibility of jury prejudice, it should not be limited to jury trials." ABA Standards, Trial by Jury sec. 4.1, Commentary 92-94 (1968).

We do not, of course, overlook that a trial judge has

the responsibility of insuring a proper trial and that there may be circumstances which will justify the restraint of an accused. It was stated in *Boose* (66 Ill. 2d 261, 266): "A defendant may be shackled when there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the trial. [Citations.]" In the absence of such a showing, however, which must be established clearly on the record (*People v. Boose,* 66 Ill. 2d 261, 267), an accused cannot be tried in shackles whether there is to be a bench trial or a trial by jury.

The State points to the trial court's concern over the "poor security" in the courtroom and argues that this was a sufficient justification for requiring the defendant to remain handcuffed during the adjudicatory hearing. The argument does not impress. There is nothing in the record to show that the defendant posed a threat of escape. While the record is not absolutely clear as to the status of the security in the courtroom, we consider that if guards or deputies were not present, they should have been summoned in order to resolve the security problem. Physical restraints should not be permitted unless there is a clear necessity for them.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

I do not agree with the court's holding that the action of the trial judge constituted an abuse of the discretion vested in him.

The juvenile probation officer's April 7 report indicates defendant had been referred to that office by the Somonauk Police Department in March of that year. He had been an habitual runaway since the age of 10. On April 8 the court adjudged him a minor in need of supervision and placed him in the La Salle County Group

Home. He became, the May 8 supplemental report states, "a serious discipline problem" at the Group Home. The May 2 episode at the La Salle County Detention Home resulted, the report continues, in hospitalization of the teacher who had suffered a broken leg, arm and nose. Thereafter, defendant was transferred by the court to the Kankakee County Detention Home, a more secure facility than the La Salle County Home, pending the adjudicatory hearing. While the report and supplemental information are included in this record, the extent to which the judge was personally aware of its contents prior to the hearings is not entirely clear. It is not unfair to presume some recollection on his part, however, since defendant had been before the court several weeks earlier when he had been adjudged a minor in need of supervision. This, it seems to me, is relevant in considering whether permitting defendant to remain handcuffed constituted an abuse of the trial court's discretion.

As Mr. Justice Stengel emphasizes in his cogent dissenting opinion in the appellate court, trial judges are vested with discretion in determining whether the likelihood of escape or violent conduct by a defendant indicates the desirability of some restraint. (21 Am. Jur. 2d *Criminal Law* sec. 240 (1965); *Loux v. United States* (9th Cir. 1968), 389 F.2d 911, 919-20, *cert. denied* (1968), 393 U.S. 867, 21 L. Ed. 2d 135, 89 S. Ct. 151.) It is not necessary that the court wait until an attempt to escape or a dangerous act occurs in the courtroom. *Loux,* at 919-20.

The majority relies upon our opinion in *Boose,* which was a substantially different situation. There, instead of a simple pair of handcuffs, "[t]he defendant was brought to court wearing handcuffs, which were threaded through shackles attached to a restraining belt wrapped around his waist. His shoelaces had been removed." (*People v. Boose* (1977), 66 Ill. 2d 261, 264.) There, instead of a judge, the defendant appeared before a jury, where the possibility of prejudice was certainly enhanced. The majority cites, as

authority for its holding, no case which did not involve a jury trial, including *Eaddy v. People* (1946), 115 Colo. 488, 492, 174 P.2d 717, 719. I note, too, that the partial sentence quoted from *Eaddy* in the majority opinion concludes with: ", except as the necessary safety and decorum of the court may otherwise require." (115 Colo. 488, 492, 174 P.2d 717, 719.) Also, it is noteworthy that in each of the cases, other than *Boose* and *Duran,* cited by the majority, the convictions were upheld, and in *Duran* multiple errors in addition to the shackling, contributed to the reversal.

The *Boose* opinion and the majority here have relied heavily upon the American Bar Association Standards, as is indicated by the quotations in the majority opinion. Those standards, however, focus primarily upon the prejudicial effect upon a jury, and we have none here. The trial judge observed that there was "poor security" in the courtroom, which the majority suggests is preferably remedied by summoning additional guards. Implicit in this suggestion is the view that calling more officers to guard the defendant somehow has a less prejudicial effect upon the judge than handcuffing the defendant. To me the exact opposite is likely. While I doubt that a judge will be prejudiced in either event, the argument that he will be more so if the prisoner appears before him in handcuffs than if the judge is told it will be necessary to summon additional guards before the prisoner is brought in is too sophisticated for me to accept.

Similarly, the argument that the handcuffs restrict defendant's ability to effectively communicate with his counsel is, in my judgment, simply not realistic. They may have done so in *Boose* where the cuffs were attached to a restraining belt, but I do not agree that effective assistance to counsel was restricted here in any significant way.

Lastly, the majority urges that the handcuffing jeopardizes the value of the presumption of innocence and demeans our system of justice. I am by no means certain

that significant loss actually occurs in either of those areas under the circumstances in this case, but, in any event, they are not the sole factors to be considered. The facts that defendant was an habitual runaway, that, while being held in a detention facility, he prevented help from reaching a teacher being severely beaten by another inmate, and that defendant might now try to escape in view of the prospect of additional confinement, were not irrelevant. Nor do we know the age, sex, condition or number of courtroom personnel present who might be able to assist in restraining defendant if an escape were attempted. The trial judge is ordinarily far better informed on such matters than we and better able to assess the security needs in his courtroom. We know from our review of the cases before us that individuals the age of defendant or younger engage in violent conduct, including homicides. While I agree that the trial judge's discretion to permit restraints should be exercised sparingly, I am not convinced that the trial judge's action here, where there was no jury involved, constituted an abuse of discretion requiring a new adjudicatory hearing.

I would accordingly reverse the appellate court and affirm the trial court.

MR. JUSTICE RYAN, also dissenting:

I concur in the dissent of Mr. Justice Underwood. In addition I wish to make some observations that are more in the nature of expressions of personal opinions than statements of legal precepts.

It would seem that when the hearing has been held before the court and not a jury a defendant should be required to demonstrate that he has in some manner suffered prejudice by being handcuffed during the trial. In this case it is not contended that the evidence did not support the court's finding that the defendant was delinquent. In fact, it is not urged that the evidence was close or evenly balanced. It appears to me to be a useless

obeisance to "the appearance, dignity, and self-respect of a free and innocent man," a needless expense, and a waste of judicial time to remand this case for another delinquency hearing at which there is no contention the finding of the court would be or could be different.

Also, I am concerned about the after-the-fact determination by the majority that the defendant should not have been handcuffed. The trial judge is charged with the responsibility for the decorum of his courtroom and with the responsibility for the safety of every person in it. He must make a judgment, balancing the possibility of offending the dignity of the defendant who has been charged with participating in an act of violence against the possibility of death or injury to himself and others in his court. If he errs in striking this balance, in my opinion, it is better to offend the dignity of the defendant than to suffer violence to erupt in the courtroom. Even at the risk of being reversed by a court of review, I would, if again a trial judge, adhere to this belief. It is the trial court and not this court that will be held accountable to the public for permitting acts of violence to occur in court. In such a sensitive area, the trial court should not be reversed short of a clear abuse of discretion.

For these reasons I do not believe the circuit court of La Salle County should have been reversed in the absence of a showing that the defendant was in someway prejudiced or that the trial court clearly abused its discretion. I therefore respectfully dissent.