THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SPENCER HARRIS, Defendant-Appellant.

Third District    No. 3—07—0481

Opinion filed March 24, 2009.

HOLDRIDGE, J., dissenting.

Fletcher P. Hamill, of State Appellate Defender's Office, of Ottawa, for appellant.

James Glasgow, State's Attorney, of Joliet (Terry A. Mertel and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WRIGHT delivered the opinion of the court:

A jury found defendant Spencer Harris guilty of armed robbery (720 ILCS 5/18—2(a) (West 2002)). The court sentenced defendant to natural life imprisonment as a habitual criminal (720 ILCS 5/33B—1 *et seq.* (West 2002)).

Following his first appeal in *People v. Harris*, No. 3—03—0523 (2005) (unpublished order under Supreme Court Rule 23), this court issued a mandate to the trial court to consider defendant's *pro se* posttrial motion. The trial court then allowed defense counsel to file an amended posttrial motion for new trial. Following an evidentiary hearing, the court denied defendant's amended motion. Defendant appeals the denial of his amended motion for new trial on grounds that plain error occurred when the use of the stun belt denied defendant his constitutional right to testify. We reverse and remand this case to the trial court on this basis.

## BACKGROUND

On July 11, 2002, the Will County grand jury indicted defendant for the offense of armed robbery, a Class X felony. The court appointed the public defender to represent defendant and the court set the case for a jury trial on January 13, 2003. Defendant asked the court to dismiss his public defender on the day of his jury trial on the grounds that his lawyer had not met with defendant or his witnesses prior to trial to properly prepare his defense. The court addressed defendant's allegations in open court and denied defendant's request. The jury trial began on the afternoon of January 14, 2003.

The record shows that on January 16, 2003, defense counsel filed a "Motion *in Limine*" to prohibit the State from using defendant's prior convictions to impeach the defendant in the event that he testified. The trial court granted the motion *in limine* at that time. Defendant did not testify at trial but offered other witnesses to testify on his behalf. The jury returned a guilty verdict on January 17, 2003.

On February 6, 2003, prior to the sentencing hearing, defendant filed a *pro se* "Motion to Dismiss Counsel" raising ineffective as-

sistance of counsel claims, including his lawyer's failure to preserve defendant's right to a speedy trial. Additionally in that motion, defendant requested the court to dismiss his current public defender and appoint new counsel to assist defendant in the preparation of a "Motion for a New Trial." Included in his *pro se* motion to dismiss his appointed attorney, defendant also objected to the use of a stun belt during his trial, stating:

> "Petitioner was highly intimidated, having to wear a stun power pack wrapped around his waist or leg calf, threats of 50,000 volts of electricity entering his body if he made any sudden moves or outbursts in Court. He has eight (8) screws implanted into his neck, to support cervical discs of his spine, four (4) on either side of neck, due to automobile accident."

The trial court briefly addressed defendant's *pro se* motion. The court denied the motion explaining that defendant "had a right to a free lawyer, but not his choice of a free lawyer." On February 14, 2003, defendant's previously appointed counsel filed a generic "Motion for New Trial" on behalf of defendant asserting that the State did not prove defendant guilty of the charge beyond a reasonable doubt. The court heard arguments on counsel's post trial motion, dismissed that motion on April 9, 2003, and set the case for a sentencing hearing.

At the sentencing hearing on June 25, 2003, the court revisited the issue of counsel's performance previously raised in defendant's *pro se* posttrial motion. Defendant told the court he had not consulted with his public defender since his jury trial on January 17, 2003. He advised the trial judge that he wanted to bring the issue of the violation of his "120 days speedy trial act" and ineffective assistance of counsel to the court's attention. Appointed counsel, present for purposes of the sentencing hearing, told the court that he could not properly argue his own ineffectiveness on defendant's behalf. The court determined that it had already ruled on the earlier motions and then sentenced defendant to natural life imprisonment pursuant to the habitual criminal statute. 720 ILCS 5/33B—1 *et seq.* (West 2002).

Defendant appealed the court's decision to summarily deny his *pro se* posttrial motion. In *People v. Harris*, No. 3—03—0523 (2005) (unpublished order under Supreme Court Rule 23), this court determined that the trial court erred in failing to inquire into defendant's *pro se* ineffective assistance of counsel claims. The mandate, issued by this court on September 13, 2005, reversed the judgment of the Will County circuit court and remanded the case to the trial court with instructions to conduct an inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel pursuant to *People v. Moore*, 207 Ill. 2d 68 (2003).

Following remand, on November 22, 2005, the trial court appointed the public defender's office to represent defendant. On February 6, 2006, defendant retained private counsel, Charles Bretz (Bretz), who requested transcripts from the trial and filed an "Amended Post Trial Motion" on July 18, 2006. The motion challenged the trial court's decisions denying defendant's multiple requests to remove the appointed public defender both before and after the jury trial.

Additionally, the posttrial motion prepared by defendant's private counsel requested a new trial based on allegations that the public defender was ineffective for failing to: (1) object to the use of the stun belt, (2) interview and call necessary witnesses, (3) introduce evidence corroborating defendant's alibi that he could not have been present at the scene of the crime due to the timing of a deposit he made at a Chicago financial institution the same day, (4) subpoena medical records and offer testimony to contradict the State's witnesses, and (5) file a motion to dismiss based on a speedy trial grounds. Private counsel also filed a brief in support of defendant's amended posttrial motion and attached copies of transcripts from various proceedings for the trial judge's consideration. The court conducted the hearing on the amended posttrial motion on May 17, 2007.

Assistant public defender Timothy McGrath testified during the hearing on the amended posttrial motion. McGrath stated that he did not see the stun belt. Further, counsel testified that he did not know defendant was wearing the belt during the trial. He also denied any prior knowledge of the Will County sheriff department's blanket policy that all felony defendants had to wear these devices during jury trials. According to McGrath, defendant did not tell him that jail personnel required him to wear the electronic security belt during the trial. Further, McGrath testified that he did not recall defendant advising him that defendant did not want to testify at trial because of the electronic security belt. McGrath did recall that the court granted his motion *in limine* that barred the State from impeaching defendant with his prior felony convictions and defendant declined to testify at the trial.

Defendant, who was now 72 years old, also testified at this hearing following remand. He explained that the first day the jury trial began, in reference to a question regarding the electronic security devices, the "[d]eputy sheriff that placed the stun belt around me advised me that I had to wear it otherwise I couldn't have a trial. So I had to sign a consent form to wear it." Defendant said he wore street clothes during the jury trial and the stun belt around his waist caused him to have a large, visible bulge on his back under his clothing. He also stated that the security device on his leg kept "falling down to the floor."

Defendant explained that he decided not to testify during his jury trial because he was afraid the electronic stun belt might "go off accidentally." He stated he had eight screws in his neck and spine and he did not know how his body would react to it if the stun belt was turned on. Defendant testified that he told McGrath about the stun belt. Defendant stated he knew the trial court ordered that his prior criminal convictions could not be used against him if he testified, but elected not to testify due to the stun belt. On redirect examination, defendant reiterated he told his attorney about the stun belt and further told his attorney he wanted to testify but only without this security belt. Defendant agreed that he did not complain to court personnel that the stun belt was uncomfortable or that it frightened him. Defendant stated his attorney did not discuss the stun belt with the trial judge.

When ruling on defendant's amended posttrial motion on July 16, 2007, the judge stated:

"The issue of the stun belt becomes simply this, no one in that trial, not the judge, not the trial lawyer, no one knew that the defendant was wearing a stun belt. And when it came to the assertion, the allegation during the course of this hearing, the defendant stated he didn't testify because he was afraid of the stun belt or the embarrassment of wearing it. He was, according to the transcripts that I read and the testimony, offered three or four times the opportunity to testify by the original trial attorney, Judge Badger, and each time he declined without ever saying anything about the stun belt, nothing.

How can an individual, how can the trial attorney possibly be responsible for ineffectiveness assistance of counsel when he doesn't even know that that's what's going on?"

The trial judge found defendant's attorney's performance at trial was not so deficient as to fall below an objective standard of reasonableness and, without a finding of deficient performance, defendant was not prejudiced or denied a fair trial. Accordingly, the court denied defendant's amended posttrial claims of ineffective assistance of counsel. Defendant appeals his conviction on the grounds that plain error resulted from the use of the stun belt at trial because the belt prevented defendant from testifying in his own defense.

## ANALYSIS

### I. Scope of the Previous Mandate

On appeal, defendant asserts it was plain error for defendant to be forced to wear an electronic security belt (stun belt) during his jury trial, absent a finding of a manifest need for the restraints, in viola-

tion of his due process rights. Further, defendant asserts that the reason he elected not to testify before the jury was due to this restraint.

The State suggests defendant is attempting to broaden the scope of our original directive on remand. The September 13, 2005, mandate and order in *People v. Harris*, No. 3—03—0523 (2005) (unpublished order under Supreme Court Rule 23), directed the trial court to conduct an inquiry consistent with the Illinois Supreme Court's ruling in *Moore*, 207 Ill. 2d 68, and consider the allegations set forth in defendant's *pro se* motion.

In his original February 6, 2003, motion, defendant wrote:

> "Petitioner was highly intimidated, having to wear a stun power pack wrapped around his waist or leg calf, threats of 50,000 volts of electricity entering his body if he made any sudden moves or outbursts in Court. He has eight (8) screws implanted into his neck, to support cervical discs of his spine, four (4) on either side of neck, due to automobile accident."

The motion included additional allegations of the trial attorney's ineffectiveness.

However, the procedural posture of the case changed after the mandate was issued. First, following remand, the trial court reviewed the *pro se* motion and appointed a new attorney to represent defendant. Later, defendant replaced his appointed counsel with private counsel. The court then allowed private counsel to file an "Amended Post Trial Motion" on July 18, 2006.

The amended motion, filed by private counsel, referred to defendant's *pro se* posttrial motion but provided additional details. While defendant's original motion did not allege defendant suffered actual prejudice based on the ineffective counsel and resulting from the use of a stun belt, the amended motion prepared by private counsel did allege and describe actual prejudice. Specifically, the motion contained additional facts alleging:

> "[Paragraph] 6. That during the trial[,] the Defendant did not testify even though his criminal history would not have been disclosed to the jury because he was afraid that the jury would see the stun belt he was forced to wear during the trial.
>
> * * *
>
> [Paragraph] 24. That the introduction of any evidence of the Defendant's prior criminal history was precluded by the trial judge in the Defendant's Motion In Limine; however, the Defendant did not testify because of his fear of wearing the stun belt which he conveyed to McGrath."

The State proceeded to a hearing on defendant's amended motion without objection.

Thus, the trial court after remand first conducted the *Moore* inquiry, appointed counsel for defendant, and then considered the merits of the 2006 amended motion for new trial. These events were consistent with the directive from this court to consider and follow the guidelines set forth in *Moore*. See *People v. Moore*, 207 Ill. 2d 68 (2003).

We reject the State's assertion that defendant is broadening the issue now on appeal beyond the scope of the remand. Defendant is appealing the trial court's ruling on his amended motion for new trial filed in 2006. The trial court properly followed the directive from this court and then went on to consider issues raised in the amended pleadings subsequently filed by new counsel following remand. This decision constituted a reasonable and efficient use of judicial resources.

## II. Trial Court's Ruling

Defendant's brief states the trial judge should have found trial counsel ineffective, and then asserts the judge's decision "should be reversed because, regardless of whether the defendant's trial counsel knew about the electronic security belt, the use of the belt constituted plain error in this case because it prevented the defendant from testifying." In response to defendant's statement of the issue on appeal, the State frames the issue on appeal as follows:

> "The issue in this case is whether *** the trial court abused his discretion in finding that trial counsel was not ineffective in not objecting to the defendant wearing a stun belt that allegedly resulted in the defendant choosing not to testify."

Thus, each party to this appeal views the error in separate contexts.

The State requests us to affirm the conviction because the trial judge properly found the defendant received effective assistance of counsel. To evaluate the State's assertion that the trial court correctly denied the amended motion for new trial, we must consider the State's argument using the familiar analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

On the other hand, defendant requests us to conclude the use of the electronic stun belt at trial constituted plain error regardless of counsel's ineffectiveness. We conclude that it is not necessary to consider the propriety of the court's ruling using a *Strickland* analysis because plain error is dispositive of the outcome of this appeal.

## III. Plain Error

We may consider whether plain error occurred even though defendant's appointed attorney did not preserve the restraint issue for our review by including this issue in a posttrial motion. Supreme Court Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a).

The Illinois Supreme Court has found that failure to conduct a *Boose* hearing (*People v. Boose*, 66 Ill. 2d 261 (1977)) can, in some circumstances, constitute plain error and accordingly may be reviewed on appeal, although not challenged at the trial level. See *People v. Allen*, 222 Ill. 2d 340, 350 (2006). To constitute plain error, a " 'defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process.' " (Emphasis omitted.) *Allen*, 222 Ill. 2d at 352, quoting *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

Our supreme court observed, in *People v. Allen*, that the defendant had not demonstrated that "his presumption of innocence, ability to assist his counsel, or the dignity of the proceedings was compromised." *Allen*, 222 Ill. 2d at 353. Thus, our supreme court has provided at least three factors to be considered when deciding whether a *Boose* violation, waived in the trial court, constitutes plain error to be considered on review.

Focusing on the dignity of the proceedings, long ago, our supreme court set high standards by stating:

> "In the absence of exceptional circumstances, an accused has the right to stand trial 'with the appearance, dignity, and self-respect of a free and innocent man.' " *In re Staley*, 67 Ill. 2d 33, 37 (1977), quoting *Eaddy v. People*, 115 Colo. 488, 492, 174 P.2d 717, 719 (1946).

The immeasurable value of the presumption of innocence provides an accused with a reason to justifiably believe the outcome of a trial will not be prejudiced by the State, but will be controlled by a fair and neutral judge.

Our supreme court has dictated that the trial court " 'must rigorously control its own courtroom procedures and, consistent with the mandates of due process, protect the rights of the parties and the public.' " *Allen*, 222 Ill. 2d at 349, quoting *People v. Martinez*, 347 Ill. App. 3d 1001, 1004 (2004). The supreme court has also provided a trial judge with the necessary tools to exercise independent judicial control over the use of restraints within the courtroom by dictating the necessity of a *Boose* hearing. *Boose*, 66 Ill. 2d at 266-67. Each individual judge must direct the conditions of restraint to create an atmosphere in the courtroom that is both dignified by neutrality and secure to all concerned.

It is undisputed the defendant wore a stun belt without the judge's approval or a *Boose* hearing. Consequently, we conclude defendant has shown that his due process rights were violated when sheriff's personnel placed a stun belt on defendant without the hearing required by *Boose* and satisfies the first prong of the plain error doctrine.

Next, we address the second prong of a plain error analysis to determine whether the error is so serious that defendant was denied a substantial right, and thus a fair trial. See *Allen*, 222 Ill. 2d at 353. We begin by considering the uncontradicted testimony the defense offered to the trial court following remand.

First, defendant claimed his testimony would have provided the jury with alibi evidence and information about his physical condition that may have discredited the eyewitness accounts against him. Second, defendant testified at his posttrial motion hearing that he did not testify during his jury trial because he was afraid the electronic stun belt might "go off accidentally." Finally, it was unrefuted that the trial court was not aware of the stun belts and did not make any findings, during the trial or during the posttrial hearing following remand in this case, that physical restraints were necessary.

Defendant testified at his posttrial motion hearing that the deputy sheriff who placed the stun belt on him advised defendant that he "had to wear it otherwise [he] couldn't have a trial" and made him sign a consent form. In spite of an opportunity to do so, the State did not offer any evidence refuting the defendant's consent to wear the stun belt was obtained by jail staff as described.

Illinois courts have determined that "the period between arraignment and trial is the most critical period of the proceedings during which the accused 'requires the guiding hand of counsel.' " *People v. Turner*, 367 Ill. App. 3d 490, 497 (2006), quoting *Powell v. Alabama*, 287 U.S. 45, 69, 77 L. Ed. 158, 170, 53 S. Ct. 55, 64 (1932). Historically, the sixth amendment "guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State and that 'this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.' " *People v. Brown*, 358 Ill. App. 3d 580, 591 (2005), quoting *Maine v. Moulton*, 474 U.S. 159, 176, 88 L. Ed. 2d 481, 496, 106 S. Ct. 477, 487 (1985).

Neither the court nor counsel had full knowledge of the circumstances affecting defendant's decision not to testify and did not address that issue when discussing the defendant's decision to forego his right to testify. As a result, defendant's concerns regarding the stun belt were not revealed, discussed, or addressed by court or counsel. Consequently, defendant did not testify.

Conditioning a jury trial upon defendant's written consent to wear a concealed electronic stun belt, without the court's or counsel's knowledge, challenges the integrity of the judicial process. We conclude that the error in this record is so serious it constituted plain error that denied defendant a substantial right, his right to testify at his

own trial. Accordingly, we conclude defendant did not receive a fair trial. See *Allen*, 222 Ill. 2d at 353-54.

## CONCLUSION

The ruling on defendant's amended posttrial motion is reversed and the cause remanded to the Will County circuit court for a new trial.

Reversed and remanded.

LYTTON, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

As the majority points out, defendant's trial judge never knew that he wore a stun belt during trial. Therein lies the problem. In *People v. Martinez*, 347 Ill. App. 3d 1001 (2004), the evidence revealed that the Will County sheriff had a policy of requiring all felony defendants to wear an electronic security belt in the courtroom. The trial judge deferred to this policy, stating that "he did not want to disrupt the sheriff's standard operating procedure." *Martinez*, 347 Ill. App. 3d at 1003. Although the instant judge did not knowingly defer to the sheriff's policy, the same concerns are triggered when law enforcement personnel require a defendant to wear an electronic security belt without the judge's knowledge. Our supreme court has declared that trial judges must control their own courtroom procedures in regards to security belts. See *People v. Allen*, 222 Ill. 2d 340 (2006). Such control involves conducting a hearing under *People v. Boose*, 66 Ill. 2d 261 (1977).

As I have stated elsewhere (see *People v. Johnson*, 356 Ill. App. 3d 208 (2005); *People v. Johnson*, 387 Ill. App. 3d 768, 773 (2009) (Holdridge, J., dissenting)), I believe the appropriate remedy in cases of this type is to remand for a retrospective *Boose* hearing. This approach affords judges the opportunity to fix improprieties, where possible, without undoing an entire trial. Accordingly, I disagree with the majority's decision to reverse defendant's conviction outright and remand for a new trial. I would remand with instructions for the circuit court to conduct a hearing and determine whether it was necessary, under the factors outlined in *Boose*, for this defendant to wear an electronic security belt at trial.