2016 IL App (3d) 130901

Opinion filed April 26, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0901 Circuit No. 12-CF-169 |
| CALVIN J. WILLIAMS, | ) ) ) | Honorable Scott Shipplett, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justice McDade specially concurred, with opinion.

**OPINION**

¶ 1  The defendant, Calvin Williams, appealed from his conviction of two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012)) and one count of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(c)(1) (West 2012)).

¶ 2            FACTS

¶ 3  The defendant was charged with three counts of predatory criminal sexual assault of a child and one count of aggravated criminal sexual abuse, all involving one victim, S.H. The

incidents were alleged to have taken place between September 25, 2010, and April 11, 2012, while the victim was 8-9 years old.

¶ 4        Prior to trial, the State served notice upon the defendant pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/115-10 (West 2012)) that it intended to offer hearsay statements that S.H. made to Rebecca Rossman (the Director of the Knox County Children's Advocacy Center), Kelli Moreland (a Department of Children and Family Services (DCFS) investigator), and Sally Miskinis (a licensed counselor). At the hearing on the motion to permit the hearsay statements, the State only proceeded on the statements made to Rossman. After hearing Rossman's testimony and viewing the video of her interview with S.H., the trial court took the matter under advisement. The record does not contain a ruling on the matter.

¶ 5        The defendant signed a plea of not guilty and jury waiver on November 5, 2012. Before accepting the waiver, the trial court asked the defendant if anyone made any threats or promises to him to get him to waive his right to a jury trial. The defendant answered in the negative.

¶ 6        The case proceeded to a bench trial. Todd Olinger, a detective with the City of Galesburg police department, testified that he initiated an investigation on or about April 11, 2012, into allegations of sexual abuse by the defendant. The defendant invoked counsel, so Olinger did not question him. Olinger was present for S.H.'s interview at the Knox County Child Advocacy Center. Olinger testified that S.H. was 9 years old at the time of the interview, and the abuse was alleged to have taken place at S.H.'s home. Olinger testified that there was a custody dispute between S.H.'s mother and the family of S.H.'s father.

¶ 7        The State's next witness was Moreland. The defendant objected, arguing that any hearsay statements were inadmissible because the statements to Moreland were not addressed in

2

the hearing held pursuant to section 115-10 of the Code. The court allowed Moreland to testify, noting that since it was a bench trial, it would take the section 115-10 motion with the testimony. Moreland testified that she was employed by DCFS as a child abuse/neglect investigator. Moreland met with S.H. at her school. S.H. told her that the defendant was her mother's boyfriend and lived in their home. S.H. knew him as "Fresh." S.H. told Moreland that she was afraid of Fresh because he touched her "down there." S.H. indicated that it had happened on more than one occasion while she was in her bed. Moreland testified that S.H.'s physical examination was normal, although that did not rule out sexual abuse. Also, S.H. and three of her sisters had vaginal yeast infections.

¶ 8        Miskinis also testified. She testified that she was a therapist, and she began providing counseling to S.H. in June 2012. The defense did not object to her testimony. Miskinis testified that S.H. told her that she was mad at the defendant because he touched her. S.H. told Miskinis that the defendant would come into her room and lie on top of her. He touched her private parts, which she identified as the front part and the back part. The workbook that S.H. worked on with Miskinis was admitted without objection.

¶ 9        Rossman, the executive director of the Knox County Child Advocacy Center and a forensic interviewer, testified that she conducted a forensic interview with S.H. and her sister in April 2012. The DVD of the interview of S.H. was played for the court. In the interview, S.H. described the defendant touching her "private parts" more than once.

¶ 10       Before S.H. was to testify, the State asked that her testimony be received in chambers with defense counsel, the defendant, and the court reporter, which the court allowed after a discussion held off the record. S.H. identified the defendant as the man who hurt her, that it happened at night, and it happened almost every night.

¶ 11    At the close of the State's evidence, the defense moved for a directed verdict. The trial court acknowledged some of the inconsistencies in S.H.'s testimony, but it found as a whole that she was credible and unrebutted. Thus, the trial court denied the motion.

¶ 12    A stipulation with respect to the defendant's work record was admitted. He was employed by Blick Art Materials as a seasonal associate, employed from July 26, 2010 - September 27, 2010, and from November 2, 2010 - December 19, 2011. His work hours were from 9:30 p.m. until 5:30 a.m., although the records indicated about 100 attendance incidents during the relevant time period, including leaving early, holiday days, personal days, sick days, and unscheduled absences.

¶ 13    S.H.'s mother, Angel, testified that the defendant moved in with them in September 2011, but he visited occasionally before that. Angel made a hotline call to DCFS on April 9, 2012, after S.H.'s paternal relatives tried to keep S.H. and told her that S.H. had made allegations regarding the defendant. There was no court custody battle with S.H.'s paternal relatives, but they always wanted to keep her longer than Angel allowed. Angel testified that during the timeframe alleged in the information, September 2010 through April 2012, she was a stay-at-home mom. She did not believe that the defendant had abused S.H.

¶ 14    Before the defendant testified, defense counsel asked to have the defendant's handcuffs removed. The defendant testified that he never abused S.H. He thought that her paternal relatives put that idea into her head. Also, he disciplined S.H. and her siblings, and S.H. did not like that. He testified that he worked third shift, leaving around 9 p.m. and returning around 7 a.m.

¶ 15    As the trial court acknowledged, the only evidence in this case was the testimony of S.H. There was no medical evidence. However, S.H.'s report of the abuse outside court and her

4

testimony in court was credible and did not change any fundamental way. The trial court found the defendant guilty of counts I and II, which alleged digital penetration, and count IV, sexual abuse, but found that the evidence was insufficient to find the defendant guilty of count III, which alleged penetration with the tongue. The defendant filed a motion for a new trial, which the trial court denied. Prior to testifying at the hearing on the motion, the defendant again asked for his handcuffs to be removed, which the trial court allowed. After the defendant testified, prior to proceeding with sentencing, the trial court had the defendant placed back in handcuffs, stating that "we only take the cuffs off for purposes of testimony, and actually, I think we only do it during trial." The defendant was sentenced to 10 years for counts I and II and 4 years for count IV, all to be served consecutively. The defendant appealed.

¶ 16                                              ANALYSIS

¶ 17        The defendant argues that the trial court committed structural error when it closed the proceedings for the victim's testimony without making constitutionally required findings and exploring alternatives to closure. The defendant acknowledges that he did not object to the closure and did not raise the issue in a motion for a new trial, so he argues for plain error review. The State contends that there was no plain error. The question of whether a claim is forfeited and reviewable as plain error is a question of law reviewed *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 18        The plain error doctrine allows a reviewing court to considered unpreserved error when either the evidence is close, regardless of the seriousness of the error, or the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The defendant argues that the closure was a structural error, making it a serious error where prejudice was presumed. We agree that we should review the claim for plain error, because "the

5

improper closure of a courtroom is a structural error that erodes the integrity of the judicial process and undermines the fairness of a trial." *People v. Burman*, 2013 IL App (2d) 110807, ¶ 49.

¶ 19    When reviewing for plain error, it must first be determined whether any reversible error occurred. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). A defendant is guaranteed the right to a public trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. However, section 115-11 of the Code permits a limited closure of a courtroom during the testimony of minors who are the victims of certain sex crimes. 725 ILCS 5/115-11 (West 2012). That section provides:

> "In a prosecution for a criminal offense defined in Article 11 or in Section 11-1.20, 11-1.30, 11-1.40, 11-1.50, 11-1.60, 12-13, 12-14, 12-14.1, 12-15 or 12-16 of the Criminal Code of 1961 or the Criminal Code of 2012, where the alleged victim of the offense is a minor under 18 years of age, the court may exclude from the proceedings while the victim is testifying, all persons, who, in the opinion of the court, do not have a direct interest in the case, except the media." 725 ILCS 5/115-11 (West 2012).

¶ 20    This statute was applicable to this case because the defendant was charged with predatory criminal sexual assault of a child, a violation of section 11-1.40 of the Criminal Code of 2012 (720 ILCS 5/11-1.40 (West 2012)), and the victim was under the age of 18. Our supreme court has held that an exclusionary order under section 115-11 of the Code is valid if it meets the requirements of the statute; it does not need to meet the more stringent limitations established by the United States Supreme Court for the closure of judicial proceedings to the press and public. *People v. Falaster*, 173 Ill. 2d 220, 226 (1996). *Falaster* was decided after, and with reference to cases that relied on *Waller v. Georgia*, 467 U.S. 39 (1984) and *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501 (1984). In concluding that the strict limitations for

6

closing the courtroom, imposed by *Waller* and *Press-Enterprise*, were not applicable, our supreme court noted that the courtroom was not completely closed, certain people were only temporarily excluded, and the press was never excluded. *Falaster*, 173 Ill. 2d at 228.

¶ 21 The defendant argues that this was a complete closure of the courtroom rather than an exclusion under section 115-11 of the Code because the trial court physically moved the trial to chambers. He also argues that the reasoning of *Falaster* did not survive the recent U.S. Supreme Court case of *Presley v. Georgia*, 558 U.S. 209 (2010). In *Presley*, the trial court excluded a spectator, which turned out to be the defendant's uncle, during *voir dire*. *Presley*, 558 U.S. at 210. However, as the Court points out in *Presley*, there are exceptions to the general rule of a public trial. *Id.* at 213. Thus, it does not appear that *Presley* had any bearing on the holding in *Falaster*.

¶ 22 Thus, the trial court had the authority to exclude people from the courtroom while the victim was testifying, pursuant to section 115-11 of the Code, without satisfying the more stringent limitations established by the United States Supreme Court for the closure of judicial proceedings. *Falaster*, 173 Ill. 2d at 228. However, in order to exclude people from the courtroom under section 115-11 of the Code, in prosecutions for the listed criminal offenses where the victim is under 18 years of age, the statute has three requirements: (1) the court is explicitly prohibited from excluding the media; (2) persons with a direct interest in the case may not be excluded; and (3) the exclusion may occur only when the victim is testifying. *People v. Benson*, 251 Ill. App. 3d 144, 149 (1993). In this case, clearly the victim was under 18, and the closure was only temporary (during her testimony), but in allowing her to testify in chambers, there was no indication whether people with a direct interest in the case or the media were also excluded. However, the defendant has not directed our attention to any person with a direct

7

interest in the case or a member of the media who was excluded. The trial court held a sidebar to discuss the exclusion, specifically allowing the defendant, his counsel, the State, and S.H.'s foster mother to be present for S.H.'s testimony. Since trial judges are presumed to follow the law, see *In re Jonathon C.B.*, 2011 IL 107750, ¶ 72 (a trial judge is presumed to know and follow the law unless the record affirmatively indicates otherwise), we presume that the judge allowed all those identified with a direct interest in the case to be present during S.H.'s testimony. While a better practice would have been to make those findings on the record, we cannot say that the trial court abused its discretion. See *Falaster*, 173 Ill. 2d at 227 (judge may use his discretion in connection with excluding those in his opinion that do not have a direct interest). Thus, there was no reversible error, and absent reversible error, there can be no plain error. See *Naylor*, 229 Ill. 2d at 602.

¶ 23     Next, the defendant argues that his counsel was ineffective for not moving to withdraw his jury trial waiver or by moving for a mistrial after the State offered the testimony of Morland and Miskinis. The defendant acknowledges his valid waiver, but he argues that allowing this testimony, after the State originally stated that it was only offering the hearsay statements of S.H to Rossman, was a change of circumstances that made his waiver invalid. The defendant contends that his counsel was ineffective then for not protecting his right to a jury trial after the waiver was rendered invalid. The State argues that the defendant failed to meet his burden of showing that his counsel's performance was deficient and, in any event, cannot show prejudice because the evidence of his guilt was overwhelming.

¶ 24     To succeed on a claim of ineffective assistance of counsel, the defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant. *People v. Ramsey*, 239 Ill. 2d 342, 433 (2010). To show deficient representation, a

8

defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 100. To meet the second prong of *Strickland*, the defendant must show a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *People v. Albanese*, 104 Ill. 2d 504, 525 (1984). Specifically, in this case, the defendant must show that there was a reasonable probability that the motions would have been granted. *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 110. Whether counsel rendered ineffective assistance of counsel is a mixed question of law and fact that we review *de novo*. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Hale*, 2013 IL 113140, ¶ 15.

¶ 25        Defense counsel objected to Morland's testimony because she did not testify at the section 115-10 hearing. Since it was a bench trial, the State asked the trial court to conduct a simultaneous section 115-10 hearing concerning the testimony of Morland and Miskinis. The trial court agreed to do that. The trial court stated that if it found Morland's statements to be unreliable, he would not consider them. The trial court never made a specific finding on the record that he found Morland's and Miskinis's testimony to be reliable and admissible. However, based on the comments in rendering its decision, it is clear that the trial court considered both of their testimony to some extent. The defendant's objection was not to the process itself; only that the changed circumstances rendered his jury waiver invalid. The defendant contends that he would never have waived a jury if he knew that the State was going to present other evidence.

¶ 26        In support of his argument that his motion to withdraw his waiver or for a mistrial would have been granted, the defendant cites to *People v. Smith*, 11 Ill. App. 3d 423 (1973). In *Smith*, the defendant waived his right to a jury based on what his counsel believed was a technical

9

defect in the charging instrument. *Id.* at 424. After the waiver, but before the bench trial, and over the defense's objection, the State successfully moved to amend the charge, correcting the defect. *Id.* The appellate court found that the trial court should have exercised its discretion to allow the defendant to withdraw his waiver because he may not have knowingly waived his right to a jury trial with regard to the amended charge. *Id.* at 425. As the court in *Smith* points out, the decision whether to grant a motion to withdraw a jury waiver is within the discretion of the trial court. *Id.* In this case, however, the trial had already started, so a motion for the withdrawal of a jury waiver would not have been timely. *People v. Norris*, 62 Ill. App. 3d 228, 232 (1978). Thus, the only question is whether defense counsel's performance was deficient for failing to move for a mistrial. In *Norris*, the appellate court held that a mistrial should have been granted when the State amended its discovery responses after the trial had started to add five extra witnesses. The court held that it could not say that the defendant's waiver was knowingly and intelligently made when he was unaware of the most damaging evidence against him. *Norris*, 62 Ill. App. 3d at 233.

¶ 27    In this case, though, there was not a surprise witness after the trial began. The defendant was aware that S.H. made statements to both Miskinis and Morland; he was just not aware that they would be testifying. Under those facts, the defendant has not shown that there was a reasonable probability that the trial court would have granted his motion for a mistrial. See *People v. Bennett*, 329 Ill. App. 3d 502, 514 (2002) (jury waiver was valid even after trial court changed *in limine* ruling to allow additional evidence against defendant). Thus, the defendant cannot prevail on a claim of ineffective assistance of counsel.

¶ 28    The defendant's final claim is that he was denied due process and a fair trial because he was restrained for the majority of the proceedings. The State contends that the issue was

10

forfeited and disagrees that the issue should be considered for plain error. The State does not contend, however, that there was no error. Rather, the State argues that the defendant is not entitled to plain error review because the evidence was overwhelming and the error was not serious.

¶ 29    As stated above, the plain error doctrine allows a reviewing court to consider unpreserved error when either the evidence is close, regardless of the seriousness of the error, or the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). It is a narrow and limited exception to the general rule of procedural default. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). The question of whether a claim is forfeited and reviewable as plain error is a question of law reviewed *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010).

¶ 30    In general, shackling the accused should be avoided. *People v. Boose*, 66 Ill. 2d 261, 265 (1977). A defendant may be shackled when there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the trial. *Boose*, 66 Ill. 2d at 266. That decision is left to the discretion of the trial judge; the trial judge should state for the record his reasons for allowing the defendant to remain shackled, and he should give the defendant's attorney an opportunity to present reasons why the defendant should not be shackled. *Id.* Although the possibility of prejudicing the jury is a factor to be considered, the reasons for forbidding shackling are not limited to trials by jury. *In re Staley*, 67 Ill. 2d 33, 37 (1977).

¶ 31    Here, there is no indication that the trial court conducted a *Boose* analysis before keeping the defendant in shackles during his trial. Thus, the defendant proved a due process violation which amounted to error by showing that he was required to be restrained without the court

having first determined that it was necessary. See *People v. Allen*, 222 Ill. 2d 340, 349 (2006). However, to be reversible as a plain error, the defendant either must show that the evidence was closely balanced or that the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. *Id.* at 353. The defendant argues that the evidence was closely balanced because there was essentially only one witness—S.H.'s testimony in court and her hearsay statements—which conflicted with the defendant's testimony and S.H.'s normal physical examination. We agree that this case was essentially a credibility contest between the defendant and S.H., with no additional evidence to contradict or corroborate either version, making the evidence closely balanced. See *People v. Naylor*, 229 Ill. 2d 584, 607-08 (2008) (evidence was found to be closely balanced when there were two opposing versions of events and no extrinsic evidence to corroborate or contradict either version).

¶ 32    Since we find that the shackling of the defendant without a *Boose* hearing was plain error, the question is one of remedy. The State asks for a remand for a retrospective *Boose* hearing, while the defendant argues that a new trial is necessary. While the availability of a retrospective *Boose* hearing has been recognized in this district, there is some disagreement regarding the appropriate application of that remedy. Compare *People v. Johnson*, 356 Ill. App. 3d 208, 212 (2005) ("in all cases where the trial court fails to employ a proper *Boose* analysis before imposing physical restraints, the matter may be remanded to the trial court to conduct a hearing"); *People v. Buckner*, 358 Ill. App. 3d 529 (2005) (remanded for a *Boose* hearing); with *People v. Harris*, 388 Ill. App. 3d 1007 (2009) (denial of motion for a new trial was reversed and cause remanded for a new trial); *People v. Johnson*, 387 Ill. App. 3d 768 (2009) (on appeal after remand for *Boose* hearing, this court held that trial court abused its discretion and remanded for a new trial, while the dissent argued for a remand for another *Boose* hearing).

¶ 33        We find that a retrospective *Boose* hearing is not appropriate in this case. Unlike *Johnson*, where the trial court considered some of the *Boose* factors and denied the defendant's request to remove an electronic security belt, there is no indication in this case that the defendant was in shackles because of any decision by the trial court in accordance with *Boose*. See *Johnson*, 356 Ill. App. 3d at 211. In fact, the trial court suggests that the defendant was in shackles due to a blanket policy of the court. Also, by granting the defendant's motion to remove his shackles while testifying, the trial court impliedly decided that they were unnecessary. Since there was no evidence of any threats or disturbances in the record, the trial court made the statement that suggests a blanket policy, and there was no hearing for which we can remand for a more complete record, we reverse and remand for a new trial.

¶ 34                                           CONCLUSION

¶ 35        The judgment of the circuit court of Knox County is reversed and remanded for a new trial.

¶ 36        Reversed and remanded.

¶ 37        JUSTICE McDADE, specially concurring.

¶ 38        The majority has reversed the convictions of the defendant, Calvin J. Williams, finding that his shackling during his trial without a *Boose* hearing to determine whether his restraint was necessary was plain error which, in the circumstances, could not be corrected with remand for a retrospective hearing. I concur with that decision.

¶ 39        I write separately because I believe there may also have been error in conjunction with the removal of a portion of the trial from the courtroom to chambers. Whether there was error is not totally clear because the discussion of the State's request that S.H.'s testimony be given in chambers was off the record.

¶ 40    The State asked that, pursuant to section 115-11 of the Code (725 ILCS 5/115-11 (West 2012)), S.H. be allowed to testify in chambers with defense counsel, the defendant, and the court reporter.  That request was allowed with the addition of S.H.'s foster mother by the trial court.

¶ 41    The statute, cited in *supra* ¶ 19 above, forbids the exclusion of persons who have a direct interest in the case and the media.  See *supra* ¶ 22.   By limiting the persons allowed to be in chambers for the testimony of S.H., the court effectively excluded the victim's mother, grandparents, any other persons with a direct interest, and representatives of the media, if any were present.

¶ 42    Because the contours of the court's ruling are not clearly discernible from the record, I am not arguing that this is a second basis for reversal in this appeal; however, because the case is being remanded for a new trial, I feel it worthwhile to voice this concern.