NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230024-U

NO. 4-23-0024

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 20, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RODOLFO LUNA, | ) | No. 21CF43 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justice Turner concurred in the judgment.
Justice Steigmann specially concurred.

**ORDER**

¶ 1    *Held*: The appellate court reversed and remanded for a new trial, concluding the trial court's failure to conduct a *Boose* hearing prior to trial constituted plain error and defendant was entitled to a new trial.

¶ 2    Defendant, Rodolfo Luna, appeals from his conviction of two counts of aggravated criminal sexual abuse, Class 2 felonies (720 ILCS 5/11-1.60(c)(1)(i) (West 2016)). On appeal, defendant argues he was denied his right to due process when he was placed in arm and leg shackles for his bench trial. Specifically, defendant argues the trial court committed plain error when it failed to conduct a hearing on the propriety of shackling him prior to trial pursuant to *People v. Boose*, 66 Ill. 2d 261 (1977). Defendant also argues his trial counsel was ineffective for only requesting the removal of his arm shackles, and not also his leg shackles, during his testimony.

The State argues no plain error occurred because the evidence was not closely balanced and defendant was not prejudiced by counsel's failure to request removal of both the arm and leg shackles. We reverse and remand for a new trial.

¶ 3                                   I. BACKGROUND

¶ 4            In February 2021, defendant was charged by information with two counts of aggravated criminal sexual abuse (*id.*). Counts I and II alleged defendant, who was over the age of 17, committed an act of sexual conduct with H.B., who was under the age of 13, in that he knowingly placed his hand on H.B.'s vagina and breast, respectively. In August 2021, defendant waived his right to a jury trial.

¶ 5                                   A. Bench Trial

¶ 6            In June 2022, the trial court conducted defendant's bench trial.

¶ 7                                   1. *H.B.'s Testimony*

¶ 8            H.B. testified she was currently 15 years old and going into her junior year of high school. H.B. used to live in Odell, Illinois, near a friend and neighbor named Y.G. Y.G. lived with her mother, Sheila; defendant, who was like a stepfather to Y.G.; and H.L., who was defendant's biological daughter. Y.G. was a year younger than H.B., and H.L. was around H.B.'s age or a little older. In the summer of fourth or fifth grade, H.B. attended a sleepover at Y.G.'s house.

¶ 9            On the night of the sleepover, the three girls decided to sleep outside on the trampoline. After an hour or two, H.B. became afraid and could not sleep, so she and H.L. decided to go inside the house. Defendant was still awake, and when he encountered the girls, he told them they could not leave Y.G. outside alone. Defendant accompanied them back outside and joined the three girls lying on the trampoline. According to H.B., Y.G. was lying on her left, defendant was on her right, and H.L. was on the other side of defendant.

- 2 -

¶ 10        H.B. testified that while lying on her back, defendant put his arm around both her and H.L. and kissed H.L. goodnight. Defendant then kissed H.B. goodnight and removed his arm from H.L. to face H.B., placing one arm on H.B.'s stomach and the other underneath her back. Defendant then began moving his hands over H.B.'s clothes in the area of her vagina. While touching H.B., defendant "moaned" into her ear, whispering, "You like that?" When he finally stopped, H.B. turned over to face away from defendant, hoping he would fall asleep. H.B. removed defendant's arm, but he pulled her back toward him and placed his hand on her breast. According to H.B., the group was not using any sleeping bags, blankets, or pillows that night.

¶ 11        On cross-examination, H.B. repeated her belief they were not using any blankets or pillows while on the trampoline. H.B. did not recall defendant coming outside before the girls went to sleep to show them how he wanted them to position themselves while sleeping there. H.B. testified she was certain it was H.L. who she went into the house with, not Y.G. H.B. agreed defendant was upset when he realized Y.G. was outside alone. H.B. disagreed defendant carried H.L. inside at one point and denied calling her grandfather to come pick her up from the sleepover. H.B. stayed the whole night and went home in the morning.

¶ 12        H.B. acknowledged she waited four years to tell police about what happened with defendant. After the family moved away to Dwight, Illinois, H.B. stayed in contact with Y.G., but not H.L. H.B. also stayed the night at the family's home in Dwight once or twice after the incident.

¶ 13        Following H.B.'s testimony, the parties stipulated defendant was over the age of 17 at the time of the events in this case.

¶ 14                                2. *Boose Hearing*

¶ 15        After defendant was sworn to testify, defense counsel requested the trial court to check with the guards to see if defendant's hands could be uncuffed if there was no safety risk.

The court responded, "The information packet from [the Illinois Department of Corrections (DOC)] for the transport indicates that the Defendant is to—I guess the security concerns none except concerns then identified as close supervision, slash constant restraints, and that was signed by a lieutenant." The court then offered to conduct a further hearing on whether the restraints could be removed, and defense counsel accepted. When prompted by the court, defense counsel clarified she only sought removal of restraints from defendant's hands and not his feet.

¶ 16        After reviewing defendant's packet from DOC, the trial court stated, "In reviewing the summary, it says there's no history of attempt to escape or escaping. No history of assaultive behavior. No known gang activity. No weapon possession while in [DOC]. No outstanding warrants." Based on this information, the court allowed defendant's hands to be uncuffed. Defendant's legs remained in restraints.

¶ 17                            3. *Defendant's Testimony*

¶ 18        Defendant testified he was currently 40 years old and in the summers of 2016 and 2017, he lived in Odell, Illinois. While living in Odell, defendant worked in construction. During that time, defendant lived with his romantic partner, Sheila, and her daughter, Y.G. Defendant's daughter, H.L., did not live with them full-time but stayed with them several times per month.

¶ 19        Defendant recalled the night H.B. came over for a sleepover where they slept outside on the trampoline. Defendant recalled the girls asked permission to sleep outside on the trampoline while defendant was in the garage working on his remote control airplanes. Defendant removed the net from the trampoline and moved it closer to the house so he could clearly see the girls from the window to check on them from inside the house.

¶ 20        According to defendant, each of the girls brought a blanket outside to use, and defendant showed the girls how he wanted them to set up their sleeping arrangement. It was

- 4 -

important to him that each girl had their own blanket because it was cold outside. Defendant explained that he told them to rub themselves in their blankets to warm up and demonstrated this on who he thought was H.L. However, Y.G. told him he was actually touching H.B.

¶ 21　　　　　After setting the girls up, defendant went to smoke a cigarette with Sheila. Sometime later, he noticed H.B. and Y.G. in the house. Defendant asked them where H.L. was and became upset when he realized the two girls had left her outside on the trampoline alone. Defendant then went outside, woke H.L. up, and walked her back inside the house. By this time, H.B. had called her grandfather to pick her up. H.B. did not sleep over that night. Defendant denied ever touching H.B.'s breast or vagina.

¶ 22　　　　　Following defendant's testimony, the trial court indicated defendant's hands could remain unshackled for the duration of trial. The defense rested, and the trial was continued to July 2022.

¶ 23　　　　　　　　　　　4. *Grandfather's Rebuttal Testimony*

¶ 24　　　　　The trial court reconvened defendant's bench trial in July 2022. In rebuttal, the State presented testimony from H.B.'s grandfather, Joseph B.

¶ 25　　　　　Joseph testified he was H.B.'s grandfather and had been her guardian since 2014. Joseph recalled the night H.B. slept over at defendant's house and denied H.B. called him to pick her up. According to Joseph, H.B. stayed the whole night and did not return until the following morning.

¶ 26　　　　　Following arguments, the trial court continued the trial pending its ruling.

¶ 27　　　　　　　　　　　5. *Guilty Verdict*

¶ 28        The trial court reconvened defendant's trial in August 2022. The court found defendant guilty on both charges. In reaching its decision, the court stated its credibility findings as follows:

> "The minor was very, actually she was very mature, articulate. She was clear and concise in her testimony. Not the least bit evasive. Although she was visibly nervous, I think she might have been shaking, she did maintain her composure throughout her testimony. Was not really impeached in any way. Her answers were direct to the questions. She was confident in her answers. She did not embellish any of her testimony, although she could have given the nature of these charges; and she did not appear to be making anything up nor did she appear to have a reason to make anything up.
>
> The Defendant also chose to testify, and really the bulk of the evidence was basically the Defendant and the alleged victim. So obviously credibility is a dispositive issue in this case as far as whether the Court finds the victim or, to be more credible or the Defendant. And so based upon that summation, I did find the Defendant, or the victim in this case to be a credible witness.
>
> The Defendant did not seem to be credible. Insofar as the incident that he was testifying about during his testimony, I'm not even sure if it's the same incident that was being discussed by the alleged victim in this case with the initials H[.]B.
>
> There were a number of things that the Defendant testified to that were inconsistent, and they were points that really from an evidentiary standpoint were not significant, whether or not the trampoline was moved closer to the house, whether the net was taken off; and those things were completely contradicted by

the statement of the alleged victim which actually led me to conclude that the Defendant was not talking about the same incident that the victim was talking about; or if he was, then I do believe that he materially misstated the evidence primarily because not only did some of the things he said not make a lot of sense and were contradictory to what the victim testified to rather credibly but also because his testimony was then impeached by the victim's guardian who testified and directly impeached testimony of the Defendant.

And as the Defendant sits there, he does definitely have much more of a reason to fabricate his testimony or lie about the evidence. He's a much more biased witness. The victim would have no reason nor was any suggested to come forth at this point in time when she did and no reason to fabricate her testimony. If she had some type of vendetta or something to that effect or a strong hostility toward the Defendant, then the accusations I suspect would have been much more severe than what she testified to; and as I said earlier, she did not really embellish.

So in considering the evidence, I do find that the alleged victim here, H[.]B[.], the minor, was a very credible witness. Again no inconsistencies."

¶ 29                    B. Posttrial Motions and Sentencing

¶ 30        In October 2022, the trial court sentenced defendant to concurrent terms of 5 years in prison on each charge, to be served concurrently with a 31-year sentence from a separate criminal case. In November 2022, defendant filed motions for a new trial and to reconsider his sentence. In his motion for a new trial, defendant argued the evidence was insufficient to convict him of aggravated criminal sexual abuse and he was unable to adequately assist his defense due to

memory loss stemming from an August 2019 car accident. In January 2023, the court denied the motions.

¶ 31        This appeal followed.

¶ 32                              II. ANALYSIS

¶ 33        On appeal, defendant argues he was denied due process when his arms and legs were shackled during his bench trial. Defendant asserts the trial court committed plain error when it failed to conduct a hearing on the propriety of shackling him prior to trial pursuant to *Boose*. Defendant also contends his trial counsel was ineffective for only requesting the removal of his arm shackles, and not also his leg shackles, during his testimony. The State responds no plain error occurred because the evidence was not closely balanced, and defendant was not prejudiced by counsel's failure to request removal of both the arm and leg shackles. We reverse and remand for a new trial.

¶ 34                              A. Plain Error

¶ 35        Defendant admits he forfeited his claim the trial court failed to conduct a *Boose* hearing prior to the start of his bench trial when he did not object at trial or raise the issue in his posttrial motion. However, defendant asserts his claim may be reviewed for plain error.

¶ 36        To preserve an alleged error for review, a criminal defendant must raise a contemporaneous objection at trial and file a timely posttrial motion. *People v. Kitch*, 239 Ill. 2d 452, 461 (2011). A defendant's failure to preserve the issue for review results in forfeiture. *Id.* However, this court may consider a forfeited argument when the defendant demonstrates plain error occurred. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Under the plain error doctrine, the defendant must demonstrate a clear or obvious error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless

of the seriousness of the error" or (2) "t[he] error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted*.*) *People v. Sebby*, 2017 IL 119445, ¶ 48.

¶ 37    Here, the State concedes the trial court committed a clear and obvious error when it failed to conduct a *Boose* hearing prior to trial. See *Boose*, 66 Ill. 2d at 266-67 (holding a defendant should only be shackled in front of the jury when necessary for safety and order and enumerating factors to be considered); see also *People v. Allen*, 222 Ill. 2d 340, 346 (2006) ("[E]ven when there is no jury, any unnecessary restraint is impermissible because it hinders the defendant's ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings."). We accept the State's concession and conclude a clear and obvious error occurred. Accordingly, we next consider whether, as defendant argues, the evidence was closely balanced.

¶ 38                    B. Whether the Evidence Was Closely Balanced

¶ 39    Defendant contends the trial court's failure to hold a *Boose* hearing prior to trial was first-prong plain error because the evidence was closely balanced, and therefore, this court should reverse his convictions and remand for a new trial. The State responds the evidence was not closely balanced, and therefore, no plain error occurred. We agree with defendant.

¶ 40    Defendant, citing *Sebby* and *People v. Naylor*, 229 Ill. 2d 584 (2008), asserts this case boiled down to a credibility contest between H.B. and himself and "[e]vidence is necessarily close where the outcome depends on the jury's resolution of a witness [*sic*] credibility." Defendant also claims his case is comparable to *People v. Williams*, 2016 IL App (3d) 130901. The State responds *Sebby*, *Naylor*, and *Williams* are all distinguishable from this case and do not compel a finding the evidence was closely balanced.

¶ 41    In *Sebby*, the defendant was found guilty of resisting a peace officer when sheriff's deputies attempted to serve a child custody order at his parents' home. *Sebby*, 2017 IL 119445, ¶¶ 4-5. On appeal to the Illinois Supreme Court, the defendant argued the trial court committed plain error when it failed to properly admonish the jury before trial and the evidence was closely balanced. *Id.* In assessing the closeness of the evidence, the supreme court found that the State's and defendant's witnesses each provided internally consistent, plausible accounts of the encounter. *Id.* ¶ 61. The *Sebby* court concluded the evidence was closely balanced such that the court's failure to properly admonish the jury constituted plain error and warranted a new trial. *Id.* ¶ 78.

¶ 42    In *Naylor*, the defendant was found guilty of several drug-related offenses. *Naylor*, 229 Ill. 2d at 587. On appeal to our supreme court, the defendant argued the admission of his prior conviction for impeachment purposes constituted plain error. *Id.* at 592-93. The supreme court found the evidence was closely balanced because the trial court was faced with two credible versions of events: the two officers', who both testified the defendant sold them heroin, and the defendant's, who testified he was swept up in a drug raid by mistake. *Id.* at 607. In finding the evidence was closely balanced, the court noted that there was no evidence to corroborate or contradict either version of events. *Id.* The court also found the defendant's testimony was credible in that it was consistent with much of the officers' testimony. *Id.*

¶ 43    In *Williams*, the defendant was convicted of predatory criminal sexual assault of a child and aggravated criminal sexual abuse following a bench trial. *Williams*, 2016 IL App (3d) 130901, ¶ 15. The trial court did not conduct a *Boose* hearing, but the defendant was handcuffed during his trial until his defense counsel requested they be removed when he testified. *Id.* ¶ 14. The defendant testified that he never abused the alleged victim and opined that her paternal relatives planted that idea in her head. *Id.* ¶ 14. In finding the defendant guilty, the trial court

acknowledged the only evidence was the alleged victim's testimony and her out-of-court reports to her therapist and a forensic interviewer, which it found to be credible. *Id.* ¶ 15. On appeal, the Third District held the trial court committed first-prong plain error when it allowed the defendant to be handcuffed during trial without first conducting a *Boose* hearing because the evidence was closely balanced. *Id.* ¶ 31. Specifically, the Third District found the case "was essentially a credibility contest between the defendant and [the alleged victim], *with no additional evidence to contradict or corroborate either version*, making the evidence closely balanced." (Emphasis added.) *Id.*

¶ 44          We conclude the evidence in this case was closely balanced. Like in *Williams*— and as the trial court specifically acknowledged in announcing the verdict—this case boiled down to a credibility contest between defendant and H.B. Although the court found H.B. to be a credible witness and found defendant's testimony to be confusing, defendant's testimony was nonetheless not implausible or fanciful. Similar to the defendants in *Naylor* and *Sebby*, nothing in defendant's testimony in this case was unbelievable or outside the realm of possibility. While defendant's testimony was inconsistent with H.B.'s in several respects, including his denial of the abuse allegations, it was not inherently or internally inconsistent. While H.B.'s grandfather testified H.B. spent the night and he did not pick her up until the morning, his testimony failed to corroborate the claims of abuse. Rather, he merely served to impeach defendant's testimony on the collateral issue of whether H.B. called him to pick her up on the night in question—which had no bearing on defendant's guilt. Additionally, no other witnesses corroborated or contradicted H.B.'s or defendant's testimony. Furthermore, neither party presented any physical or other forensic evidence to corroborate their version of events.

¶ 45　　　　　　Moreover, defendant's appearance in hand shackles for half of the bench trial and leg shackles for the entirety of the proceedings without justification offended the dignity of the judicial process because it deprived him of his "right to stand trial with the appearance, dignity, and self-respect of a free and innocent man." (Internal quotation marks omitted.) *In re Staley*, 67 Ill. 2d 33, 37 (1977). While the trial court found H.B.'s testimony to be more credible, the very policy underlying *Boose* is to prevent the possibility that the appearance of a defendant in shackles may have improperly prejudiced the factfinder against him. See *Boose*, 66 Ill. 2d at 265 ("It has been held that the shackling of the accused should be avoided if possible because: (1) it tends to prejudice the jury against the accused; (2) it restricts his ability to assist his counsel during trial; and (3) it offends the dignity of the judicial process."). We note that these risks are equally present when a defendant elects to have a bench trial rather than a jury trial. See *Staley*, 67 Ill. 2d at 37. Because this case was a credibility contest "with no additional evidence to contradict or corroborate either version," we conclude the evidence was closely balanced and defendant has established plain error occurred.

¶ 46　　　　　　　　　　　　　　　C. Remedy

¶ 47　　　　　　Defendant argues he is entitled to a new trial rather than a retrospective *Boose* hearing. We agree.

¶ 48　　　　　　In *People v. Johnson*, 356 Ill. App. 3d 208, 211 (2005), the Third District held that where the trial court has not fully considered the necessity of restraints, the issue can be remedied by conducting a retrospective *Boose* hearing rather than immediately proceeding to a new trial. "If the hearing reveals an adequate basis for having used [restraints], then the defendant's conviction should stand. If, however, the *Boose* analysis does not favor using the [restraints], then a new trial would be indicated." *Id.*

¶ 49 Here, we conclude a retrospective *Boose* hearing is not necessary and defendant is entitled to a new trial. Unlike in *Johnson*, the trial court in this case did, in fact, conduct a complete *Boose* hearing (albeit midtrial rather than before trial) and concluded defendant's hand restraints were not necessary. While the court did not address the issue of his leg shackles, as it was required to do, its analysis regarding the hand shackles shows that the leg shackles were equally unjustified. Specifically, the court found that in reviewing the summary, defendant had "no history of attempt to escape or escaping. No history of assaultive behavior. No known gang activity. No weapon possession while in [DOC]. No outstanding warrants." Like the defendant in *Williams*, the record suggests defendant appeared in shackles for the majority of these proceedings "due to a blanket policy of the court." *Williams*, 2016 IL App (3d) 130901, ¶ 33. Such a blanket policy is impermissible under *Boose*. See *Boose*, 66 Ill. 2d at 266-67. Accordingly, we reverse and remand for a new trial.

¶ 50 Because we find this issue to be dispositive, we need not address defendant's alternative argument he was denied the effective assistance of trial counsel.

¶ 51                                   III. CONCLUSION

¶ 52 For the reasons stated, we reverse defendant's convictions and remand for a new trial.

¶ 53 Reversed and remanded.

¶ 54 JUSTICE STEIGMANN, specially concurring:

¶ 55 Although I completely agree with my distinguished colleagues in the majority, I write this special concurrence to express my shock at the trial court's utter disregard of an Illinois Supreme Court rule governing the shackling of a defendant during trial. It is hard for me to believe that in June 2022, a trial court in Livingston County would completely ignore the prohibition

against shackling a defendant in a courtroom without (1) a hearing and (2) a finding that such shackling was necessary.

¶ 56                                    A. *Boose*

¶ 57        *Forty-six years ago*, the Illinois Supreme Court addressed the circumstances in which a defendant may be shackled in the courtroom. In *Boose*, 66 Ill. 2d at 266, the court wrote the following:

> "A defendant may be shackled when there is reason to believe that he may try to escape or that he may pose a threat to the safety of people in the courtroom or if it is necessary to maintain order during the trial. [Citations.] The determination is left to the discretion of the trial judge, and he may select the physical restraints most suitable in light of all the circumstances. [Citation.] The trial judge should state for the record his reasons for allowing the defendant to remain shackled, and he should give the defendant's attorney an opportunity to present reasons why the defendant should not be shackled. These proceedings should take place outside the presence of the jury."

¶ 58                    B. Later Illinois Supreme Court Decisions

¶ 59        Since rendering its opinion in *Boose*, the Illinois Supreme Court has reiterated its holding on at least the following seven different occasions:

¶ 60        *Staley*, 67 Ill. 2d 33, 364 N.E.2d 72 (1977) (*Boose* applies to juvenile proceedings);

¶ 61        *Allen*, 222 Ill. 2d 340, 856 N.E.2d 349 (2006) (*Boose* applies even when no jury is present);

¶ 62        *In re Jonathon C.B.*, 2011 IL 107750, 958 N.E.2d 227 (discussing a shackling issue);

¶ 63        *In re Benny M.*, 2017 IL 120133, 104 N.E.3d 313 (involuntary treatment proceedings);

¶ 64        *People v. Buss*, 187 Ill. 2d 144, 718 N.E.2d 1 (1999) (discussing shackling);

¶ 65        *People v. Reese*, 2017 IL 120011, 102 N.E.3d 126 (shackling during jury selection);

¶ 66        *People v. Urdiales*, 225 Ill. 2d 354, 871 N.E.2d 669 (2007) (discussing shackling issue).

¶ 67                    C. The Boose Rule Also Applies to Bench Trials

¶ 68        In *Allen*, 222 Ill. 2d 340 at 346, the Illinois Supreme Court held that *Boose* applied even to security devices (a stun belt in *Allen*) that were not visible to a jury, explaining as follows:

> "In *In re Staley*, 67 Ill.2d 33, 37, 364 N.E.2d 72 (1977), this court stated:
> 'The possibility of prejudicing a jury, however, is not the only reason why courts should not allow the shackling of an accused in the absence of a strong necessity for doing so. The presumption of innocence is central to our administration of criminal justice. In the absence of exceptional circumstances, an accused has the right to stand trial "with the appearance, dignity, and self-respect of a free and innocent man." [Citation.] It jeopardizes the presumption's value and protection and demeans our justice for an accused without clear cause to be required to stand in a courtroom in manacles or other restraints while he is being judged.'
>
> Thus, *even when there is no jury*, any unnecessary restraint is impermissible because it hinders the defendant's ability to assist his counsel, runs afoul of the presumption of innocence, and demeans both the defendant and the proceedings." (Emphasis added.)

- 15 -

¶ 69     At least 20 decisions from the Illinois Appellate Court have cited *Allen*. Four of those cases were decisions of the Fourth District, two of which arose from Livingston County. *People v. Bell*, 2020 IL App (4th) 170804, 145 N.E.3d 740 (Livingston County); *People v. Sanders*, 2017 IL App (4th) 141070-U (Livingston County); *People v. Lee*, 2017 IL App (4th) 141044-U; *People v. Bennett*, 2013 IL App (4th) 110631-U. At least 10 decisions of the Fourth District have cited *Boose*, 6 of which arose from Livingston County.

¶ 70     D. Illinois Supreme Court Rule 430 (eff. July 1, 2010) Addresses the Trial of Incarcerated Defendants

¶ 71     Just in case it were possible for trial courts, over the 33 years from the time the supreme court in *Boose* first told trial courts how they must address the subject of shackling defendants at trial, to disregard that decision, the Illinois Supreme Court even issued a rule to the same effect. In July 2010, the supreme court promulgated Rule 430, titled "Trial of Incarcerated Defendant," which again repeated and reiterated what the supreme court wrote in *Boose*. Ill. S. Ct. R. 430 (eff. July 1, 2010).

¶ 72     As a result of the trial court's egregious error in this case, this court is required to reverse defendant's conviction of aggravated criminal sexual abuse and remand for a new trial. Assuming the State can even gather the evidence and witnesses necessary for a new trial of defendant, that second trial will require the victim in this case to once again relive the dreadful events she experienced and testify about them once again in open court.

¶ 73     After almost a half century of repeated admonitions to the trial court by the Illinois Supreme Court and the Illinois Appellate Court regarding when prisoners may be shackled in the courtroom, I find it unbelievable that the Livingston County circuit court in this case acted in

complete disregard of all of this authority when defendant was given a bench trial on a serious felony charge and was kept in ankle shackles throughout.